1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DR. MARK S. MOSS,                            CASE NO. 09cv0674 DMS (WVG)

12                            Plaintiff,          **ORDER DENYING**
                                                  **DEFENDANT'S MOTION TO**
              vs.
13                                                **DISMISS**

14   PROVIDENT LIFE AND ACCIDENT                  **[Docket No. 30]**
     INSURANCE COMPANY, et al.
15
                              Defendant.
16

17         This matter comes before the Court on Defendant Provident Life and Accident Insurance

18   Company's ("Provident") motion to dismiss Plaintiff's Third Amended Complaint ("TAC").

19   Defendant filed its motion on September 28, 2009, Plaintiff filed his opposition on November 6, 2009,

20   and Defendant filed its reply on November 13, 2009.  For the reasons discussed below, the Court

21   denies Defendant's motion.

22                                            **I.**

23                                      **BACKGROUND**

24         In 1982, Plaintiff contracted for two disability policies with Defendant, Policy Nos. 6-PC-

25   495853 and 6-PC-486115.  (TAC at ¶ 2.)  Plaintiff also contracted for Social Insurance Substitute

26   Benefit Riders ("Riders") on each policy.  (*Id.* at ¶ 6.)  Plaintiff paid the premiums in 1982 and 1983,

27   and in 1984, he became disabled.  (*Id.* at ¶ 4.)  Plaintiff submitted a claim in 1984, and Defendant

28   began paying benefits on both policies, and continues to pay benefits today.  (*Id.* at ¶ 5.)

1    On September 6, 2006, Defendant realized that it had failed to pay Plaintiff any benefits under

2  the Riders. (*Id.* at ¶ 10.) It notified Plaintiff of the mistake, and sent the benefits owed, but only under

3  Policy Number 6-PC-495853. (*Id.*) Until this time, Plaintiff believed that he was receiving all

4  benefits under both policies, including the Riders. (*Id.* at ¶ 51.)

5    Plaintiff thereafter contacted Defendant demanding payment of benefits under the Rider for

6  Policy Number 6-PC-486115. (*Id.* at ¶ 12.) On February 8, 2008, Defendant sent Plaintiff a letter

7  disputing the existence of this Rider, and informing Plaintiff that he had 180 days to appeal this "claim

8  decision." (*Id.* at ¶ 13; TAC, Ex. 3.)

9    Plaintiff filed an appeal in April 2008. (TAC at ¶ 15.) In addition to the appeal, Plaintiff

10  submitted his application for the Rider, his canceled check for the 1982 premium for the Rider, and

11  the Rider Policy. (*Id.*) On September 18, 2008, Defendant sent a field representative, Richard S.

12  Gaume, to interview Plaintiff. (*Id.* at ¶ 43.) Plaintiff provided Mr. Gaume with the same documents

13  he provided previously to Defendant. (*Id.*) In his report of that meeting, Mr. Gaume stated: "Dr.

14  Moss feels that he has shown us that he did take out the SIS rider coverage with policy 115, but we

15  can not validate that because our documents are misplaced." (*Id.* at ¶ 44; TAC, Ex. 11.) On

16  November 18, 2008, Defendant sent Plaintiff a letter confirming its position that Plaintiff did not

17  purchase a Rider on Policy Number 6-PC-486115, and denying Plaintiff's appeal. (TAC at ¶ 45, Ex.

18  4.)

19    Shortly thereafter, Plaintiff filed the present case.

20                                         **II.**

21                                    **DISCUSSION**

22    Defendant argues Plaintiff's claims are time-barred according to statute and contract. Plaintiff

23  disagrees. He asserts he is entitled to the benefits of the delayed discovery doctrine. He also contends

24  the statute of limitations on his bad faith claim and his intentional infliction of emotional distress claim

25  did not begin to run until Defendant denied his appeal on November 18, 2008. Plaintiff also asserts

26  Defendant is equitably estopped from relying on the contractual limitation provision.

27  **A.    Standard of Review**

28

09cv0674

1    In two recent opinions, the Supreme Court established a more stringent standard of review for

2  12(b)(6) motions.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v.*

3  *Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint

4  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

5  its face.'"  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

6  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7  the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

8    "Determining whether a complaint states a plausible claim for relief will ... be a context-

9  specific task that requires the reviewing court to draw on its judicial experience and common sense."

10  *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  In *Iqbal*, the Court began this

11  task "by identifying the allegations in the complaint that are not entitled to the assumption of truth."

12  *Id.* at 1951.  It then considered "the factual allegations in respondent's complaint to determine if they

13  plausibly suggest an entitlement to relief."  *Id.* at 1951.

14  **B.    The Statute of Limitations**

15    As indicated in the Court's Order on Defendant's previous motion to dismiss, this is a diversity

16  case, therefore California law applies.  Under California law, Plaintiff's breach of contract claim is

17  subject to a four-year statute of limitations, Cal. Civ. P. Code § 337, and his bad faith and intentional

18  infliction of emotional distress claims are subject to a two-year statute of limitations.  Cal. Civ. P.

19  Code § 339(1) (bad faith); Cal. Civ. P. Code § 335.1 (intentional infliction of emotional distress).

20  Defendant contends that each of these claims is based on its failure to pay benefits under the Rider,

21  which occurred in 1984, therefore Plaintiff should have filed his claims for bad faith and intentional

22  infliction of emotional distress by 1986, and his breach of contract claim by 1988.  Because Plaintiff

23  did not file his Complaint by those dates, Defendant asserts it is untimely.  Plaintiff disputes this

24  assertion based on the delayed discovery doctrine.  He also disputes the starting date for the statute

25  of limitations on his bad faith and intentional infliction of emotional distress claims.

26    "[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations

27  begins to run when the plaintiff has reason to suspect an injury and some wrongful cause[.]"  *Fox v.*

28  *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).  Here, Plaintiff alleges that he discovered

1  Defendant was not paying him benefits under the Rider when he received Defendant's September 6,

2  2006 letter informing him of its failure to make payments under the other Rider.  Based on that

3  allegation, Plaintiff argues the statute of limitations on his breach of contract claim did not begin to

4  run until September 6, 2006.  With that accrual date, Plaintiff asserts his claim, which was filed on

5  January 27, 2009, is timely.

6  Defendant does not dispute Plaintiff's allegation that he actually discovered Defendant was

7  not paying benefits on the Rider until he received the September 6, 2006 letter.  Instead, Defendant

8  argues that Plaintiff could have and should have discovered that Defendant was not paying those

9  benefits upon receipt of his first benefits check.  In support of this argument, Defendant relies on

10  Plaintiff's admissions that he applied for the Rider, paid the premium for the Rider, and the Rider was

11  issued.  However, none of these facts, either alone or in combination, would have been sufficient to

12  put Plaintiff on inquiry notice that Defendant was not paying benefits under the Rider.  Defendant

13  accepted Plaintiff's claim and began paying him benefits under both policies.   Under these

14  circumstances, a reasonable person would likely believe, as Plaintiff allegedly did, that he was

15  receiving all the benefits to which he was entitled under his policies.  There would be no "reason to

16  suspect" that Defendant was not paying all of the benefits in this situation.  Defendant's assertion that

17  Plaintiff could or should have discovered Defendant's error ignores the threshold issue of whether

18  Plaintiff had "reason to suspect" any wrongdoing.  The allegations in the TAC answer that question

19  in the negative, and that is sufficient to withstand Defendant's motion to dismiss.

20  An accrual date of September 6, 2006, however, does not render all of Plaintiff's claims timely.

21  Although the breach of contract claim was filed within the four-year statute of limitations, the bad

22  faith and intentional infliction of emotional distress claims were not filed within their two-year statute

23  of limitations.  In an effort to save these claims, Plaintiff argues the statutes did not being to run until

24  Defendant denied Plaintiff's appeal on November 18, 2008.   Defendant does not address this

25  argument, other than to state that the claims accrued in 1984 when it failed to pay benefits under the

26  Rider.

27  There is authority to support Plaintiff's argument that these claims did not accrue until

28  Defendant denied Plaintiff's appeal. *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1144

1   n.4 (1990) (stating duty of good faith and fair dealing in insurance contract is breached on wrongful

2   denial of claim); *Frazier v. Metropolitan Life Ins. Co.*, 169 Cal. App. 3d 90, 103-04 (1985) (stating

3   bad faith action does not commence until insurer denies claim). *See also Murphy v. Allstate Ins. Co.*,

4   83 Cal. App. 3d 38, 51 (1978) (stating point at which defendant's conduct becomes sufficiently

5   outrageous and plaintiff's emotional distress sufficiently severe is question of fact). In light of this

6   authority, and Defendant's failure to address it, the Court agrees with Plaintiff that these claims did

7   not accrue until Defendant denied Plaintiff's appeal on November 18, 2008. Applying that accrual

8   date, Defendant is not entitled to dismissal of Plaintiff's claims based on the statute of limitations.

9   **C.     Contractual Limitations**

10          In addition to asserting the statutes of limitations, Defendant asserts Plaintiff's claims are

11  barred by the limitation provision set out in the contract. That provision states:

12          No action at law or equity shall be brought to recover on this policy prior to the
            expiration of 60 days after written proof of loss has been furnished in accordance with
13          the requirements of this policy. No such action shall be brought after the expiration
            of 3 years after the time written proof of loss is required to be furnished.

14

15  (TAC, Ex. 1(a) at 7.) Defendant asserts Plaintiff should have provided proof of loss on or before May

16  1984, therefore his claims should have been filed on or before May 1987. Because they were not filed

17  by that deadline, Defendant asserts the claims are untimely. In response, Plaintiff argues the doctrine

18  of equitable estoppel delayed the accrual of his claims such that they were filed in a timely manner.

19          Equitable estoppel applies if the party invoking the doctrine "'has been induced to refrain from

20  using such means or taking such action as lay in his power, by which he might have retrieved his

21  position and saved himself from loss.'" *Benner v. Industrial Accident Commission*, 26 Cal. 2d 346,

22  349-50 (1945) (quoting 3 John Norton Pomeroy, *Equity Jurisprudence* § 812, p. 233 (5th ed.)). The

23  inducement must have been caused by the conduct of the party sought to be estopped. *Id.* at 349. If

24  it was, that party cannot invoke the delay to defeat recovery. *Id.* (citations omitted).

25          Here, Plaintiff asserts it was Defendant's conduct that caused him to delay filing suit. That

26  conduct included Defendant's failure to inform him of the contractual limitations period until February

27  18, 2008, its payment of benefits under the policies, and its instruction to Plaintiff to appeal the denial

28  of his claim for benefits under the Rider. Defendant does not dispute that it engaged in this conduct,

1   but argues that the first and third events cannot create an estoppel because they occurred after the

2   contractual limitations period expired.  Notably, Defendant does not address the second event, but it

3   is precisely this conduct that created the estoppel.

4           Defendant faults Plaintiff for failing to allege that he was diligent and for failing to "grasp the

5   concept of reliance[.]"  (Mot. at 13.)  However, "diligence" is not an element of equitable estoppel,

6   and Plaintiff has sufficiently alleged that he relied on Defendant's conduct in refraining from filing

7   suit.  (*See* TAC at ¶ 9.)  These allegations are sufficient to invoke the doctrine of equitable estoppel,

8   and to defeat Defendant's motion to dismiss.[1]

9                                               **III.**

10                                         **CONCLUSION**

11          In light of the above, Defendant's motion to dismiss Plaintiff's TAC is denied. With this ruling,

12  the parties shall attend an Early Neutral Evaluation Conference with Judge Gallo on **December 14,**

13  **2009**, at **9:00 a.m.**, at which time a trial date will be set.  Judge Gallo will be issuing a separate order

14  outlining the practices and procedures for ENE conferences in his chambers.

15          **IT IS SO ORDERED.**

16  DATED:  November 19, 2009

17                                         _____

18                                         HON. DANA M. SABRAW
                                           United States District Judge

19

20

21

22

23

24

25

26

27

28          [1]  In light of this finding, the Court declines to address Defendant's additional arguments of
    waiver, equitable tolling and the Fair Claims Practices Act.

                                             - 6 -                              09cv0674